AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
Middle District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  19-mj-ᵢ₀\
)
Gold Samsung Cell Phone, IMEI: 354255096762283; )
FCC: A3LSMJ737P; Currently in the Custody of the East )
Baton Rouge Parish Sheriff's Office, Baton Rouge, LA )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

### SEE ATTACHMENTS "A" AND "C"

located in the _____ Middle _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized):*

### SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:922g(1) | Felon in possession of a firearm; |
| 18:924(c)(1)(A) | Possession of a firearm during and in relation to a drug trafficking crime; and |
| 21:841(a)(1) | Possession with intent to distribute a controlled substance. |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*TFO* _Resa Da_____
*Applicant's signature*

Resa Davis, ATF Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___5\3\19___

City and state: Baton Rouge, Louisiana

_Erin Wilder-Dromes_____
*Judge's signature*

Erin Wilder-Doomes, Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is a 32GB, Samsung, with IMEI # 354255096762283, SKU # SPHJ737PABB, FCC ID # A3LSMJ737P, hereinafter the "Device." The Device is currently in law enforcement possession, in the East Baton Rouge Parish Prison Property, where it was taken into custody incident to the arrest and processing of Eddie Jones, Sr., on March 8, 2019.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.     The following records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g)(1), Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Section 924(c) and involve Eddie Jones, Sr.:

    a.   any information related to narcotics trafficking;

    b.   lists of customers or other dealers/distributors and related identifying information;

    c.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

    e.   all financial records or other account information related to proceeds of narcotics trafficking.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a.   records of Internet Protocol addresses used;

    b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

## <u>ATTACHMENT C: SIX (6) PHOTOS</u>

1.      Photo of front of the Device

2.      Photo of back of the Device

3.      Photo of the Device, as taken into custody, in black carrying case/wallet, with ID

4.      Photo of the Device, as taken into custody, in black carrying case/wallet, with ID
        fully exposed

5.      Photo of the Device, depicting IMEI and SKU

6.      Photo of the Device, depicting IMEI and FCC ID









SAMSUNG

IMEI : 354255096762283    18,10
SKU : SPHJ737PABB    32GB

BULK



**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Resa J. Davis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

an electronic device—which is currently in law enforcement possession, in the East Baton

Rouge Parish Prison Property, and the extraction from that property of electronically stored

information described in Attachment B.

2.      I am an investigative law enforcement officer of the United States within the

meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by

law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. §

2516.

3.      I am a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco,

Firearms, and Explosives ("ATF") in Baton Rouge, Louisiana, and have been so since

November 2015.  I have been employed by the East Baton Rouge Sheriff's Office

("EBRSO") for the past twenty-two (22) years and am currently a Lieutenant in the

Homicide Division.  Prior to being assigned to the Homicide Division in November 2015, I

was assigned to the Narcotics Division for approximately 17 years.  While assigned to the

Narcotics Division, I was assigned to the Drug Enforcement Administration ("DEA") as a

TFO from August 2005, to October 2011.  I have attended and successfully completed TFO

training with ATF.  I have conducted and been involved in numerous federal investigations

relating to the aspects of Federal firearms violations.  As a result of my training, general

knowledge and experience as a TFO with ATF, I am familiar with the Federal Firearms

Laws.  For instance, I know that it is a violation of 18 U.S.C. § 922(g)(1), for a convicted

felon to possess a firearm.

4.     As an EBRSO Deputy and ATF TFO, I have conducted numerous

investigations of convicted felons in illegal possession of firearms in violation of 18 U.S.C. §

922(g)(1), unlawful drug distribution, in violation of 21 U.S.C. § 841(a)(1), Using, Carrying

or Possessing a Firearm in Connection with a Crime of Violence or Drug Trafficking Crime,

in violation of 18 U.S.C. § 924(c), and participated in electronic and physical surveillance,

surveillance of undercover transactions, the introduction of undercover agents, the execution

of search warrants, and debriefings of cooperating sources.  Through my training, education,

and experience, I have become familiar with the manner in which illegal drugs are

transported, stored, and distributed.  In addition, I have conducted follow up investigations of

various forms of criminal activity where the participants of said criminal activity assisted

their planning and communication to further the criminal venture through the use of various

electronic devices, including cellular telephones and computers.  I have participated in

investigations involving firearms crimes and drug distribution crimes, and I am familiar with

the ways in which drug traffickers conduct their business, including, but not limited to, their

methods of importing and distributing drugs, their use of cellular telephones and of digital

display paging devices, and their use of numerical codes and code words to conduct their

transactions.

5.     The statements contained in this affidavit are based in part on my training and

experience, as well as on information provided to me by other law enforcement officers.

Because this affidavit is being submitted for the limited purpose of securing a search warrant,

I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts which I believe are necessary to establish the necessary foundation for the requested warrant. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched is a 32GB, Samsung Cell Phone, with IMEI # 354255096762283, SKU # SPHJ737PABB, FCC ID # A3LSMJ737P, hereinafter the "Device." The Device is currently in law enforcement possession, in the East Baton Rouge Parish Prison Property, where it was taken into custody incident to the arrest and processing of Eddie Jones, Sr., on March 8, 2019. The Device was not seized as evidence incident to the arrest; rather, it is being held as the property of the prisoner, Eddie Jones, Sr., who remains in custody at this time. Photos of the Device may be found in Attachment C.

7.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.     This application arises from an EBRSO investigation, which began with a traffic stop on March 8, 2019. On that date, EBR Sheriff's Deputy Yoni Canales and Corporal José Sandoval initiated a traffic stop and approached the driver and passenger sides of the subject vehicle, respectively. The driver of the vehicle was Eddie Jones, Sr. ("Jones, Sr."). As Deputy Canales approached, Jones, Sr. was attempting to exit the vehicle. Deputy Canales instructed Jones, Sr. to remain in the vehicle, continued his approach and made

3

contact with Jones, Sr. at the open driver side door. Deputy Canales immediately noticed that the vehicle emitted a strong smell of marijuana, at which point Deputy Canales advised Jones, Sr. of his *Miranda* rights, to which Jones, Sr. responded "Yes, I understand."

9.      Meanwhile, Corporal Sandoval made contact with the front and rear seat passengers. Both passengers were advised of their *Miranda* rights and acknowledged their understanding thereof.

10.     While re-contacting the front seat passenger, Deputy Canales observed, in plain view on top of the center console, one digital scale and a clear plastic baggie containing suspected Xanax.

11.     Corporal Sandoval then re-contacted Jones, Sr., who was handcuffed, searched, and then placed in the backseat of Deputy Canales' patrol unit. Jones, Sr. was found to have $2,930 in cash in his left front pants pocket, and $905 in cash in his left rear pants pocket.

12.     Law enforcement officers proceeded to search the vehicle, resulting in the discovery of the following items, all of which were seized as evidence: SCCY CPX-2, 9 mm pistol, serial #455751, loaded with 11 live rounds 9mm Perfecta; white grocery bag containing $7,805 in cash; 2 bags of suspected raw marijuana (28 grams TPW); $10,005 in cash; large plastic bag of suspected raw marijuana (343.9 grams TPW); plastic bag of suspected raw marijuana (67.1 grams TPW); 2 plastic baggies of suspected raw marijuana (76.2 grams TPW); large Ziploc bag containing multi-colored, suspected ecstasy/MDMA pills (1002 dosage units); plastic bags of suspected methamphetamine (94.6 grams TPW); loose, clear plastic sandwich bags; pre-rolled, suspected marijuana cigars (22.2 grams TPW),

packaged for purchase in clear plastic containers; (5) clear plastic baggies of suspected Xanax/Alprazolam, 2 mg (505 dosage units); and a box of clear plastic sandwich bags.

13.     Deputy Canales' report indicates that the cash found in the vehicle was in denominations consistent with those carried by subjects engaged in narcotics trafficking. Furthermore, based on my training and experience, the quantity of each substance found in the vehicle is consistent with distribution quantities thereof.

14.     Upon being questioned by Corporal Sandoval, Jones, Sr. claimed that everything found in the vehicle, including the gun, belonged to him.  Thereafter, Jones, Sr. refused to answer any more questions.

15.     The SCCY CPX-2, 9 mm pistol, with serial # 455751, was listed in NCIC as a stolen firearm.  The firearm was reported stolen from Zachary, Louisiana, on December 4, 2017.

16.     Jones, Sr. was the driver of the vehicle at the time of the traffic stop.  The firearm was located on the driver side floorboard of the vehicle.  Jones, Sr. is a convicted felon and therefore prohibited from possessing a firearm.  Further, at least one of Jones, Sr.'s prior convictions indicates a history of involvement in narcotics trafficking.  Specifically, on October 27, 2016, Jones, Sr. was convicted in Louisiana's 19th Judicial District Court, in and for the Parish of East Baton Rouge, of possession with intent to distribute (Schedule I, marijuana); possession with intent to distribute (Schedule I, MDMA); possession with intent to distribute (Schedule II, cocaine); possession with intent to distribute (Schedule IV, alprazolam); and attempted possession of a firearm/carrying a concealed weapon by a convicted felon.

17.     Both Jones, Sr. and the backseat passenger, Eddie Jones, Jr., were transported to the central substation, at which point it was discovered that both arrestees were subject to outstanding warrants, via EBRSO and Zachary PD, respectively.  Both Jones, Jr. and Jones, Sr. were transported and booked into East Baton Rouge Parish Prison.

18.     At the time he was processed and booked into the East Baton Rouge Parish Prison, Jones, Sr. was in physical possession of the Device, which is gold in color, and which was contained in a black carrying case/wallet.  Inside the front cover of the carrying case/wallet are card-holders, one of which held the Louisiana Driver's License of Eddie D. Jones (Jones, Sr.), which can be seen in the photo in Attachment C.

19.     In a recorded jail telephone call on March 8, 2019, the date that Jones, Sr. was arrested and booked, the following exchange took place, in relevant part:

> **Inmate/Jones, Sr.:** "Mama?"
>
> **Female:** "Yeah."
>
> **Inmate/Jones, Sr.:** "You, um, you cleaned up?"
>
> **Female:** "Yeah."
>
> **Inmate/Jones, Sr.:** "Ok, and where did you – go ..."
>
> **Female:** "Um, where my dog's at."
>
> **Inmate/Jones, Sr.:** "Ok. You had a key?"
>
> **Female:** "Yeah. I took it. From – I asked him for it."
>
> **Inmate/Jones, Sr.:** "Ok, ok, ok, ok, ok."
>
> **Female:** "So, I didn't get the keys – I don't have the keys to Queen's pin. I got the keys to everything else, but the dog pin key's not on there, but she still got food in there, or whatever, but um – man, I'm so fuckin' paranoid right now, bruh, I just –"

6

**Inmate/Jones, Sr.:** "Ok, ok, no listen. Uh, the sandbox? And that little tub next to it. [unintelligible] And the wooden thing in the drawer."

**Female:** "I got it."

**Inmate/Jones, Sr.:** "Ok, so listen. Where we sleep – the bed, the headboard…"

**Female:** "I got that."

**Inmate/Jones, Sr.:** "Ok, alright. Ok, so you gonna need that to get Eddie. Alright?"

**Female:** "Why is he there? [unintelligible]"

**Inmate/Jones, Sr.:** "They – they just was being a bitch and didn't want to let him go. 'Cause he was sittin' in the backseat with it. Feel me? [unintelligible]"

**Inmate/Jones, Sr.:** "Yeah, but listen – um, they don't really know everything yet. But, um, I had been hearing something about probation and parole bonds. I don't really know if it's true or not. This is from before I left, right? So, here's what you do. Call – um, I'm gonna get my phone, whenever you come get Eddie. I'm gonna – I'm gonna turn my phone – to release my phone to him. And, you call G, 'cause G owe me something, right?"

**Female:** "Uh huh."

**Inmate/Jones, Sr.:** "Just tell him, instead of giving me what he owe me, ask him can he cash me out. He gonna know what you mean. And, I told – I told Eddie – umm, you know, who to talk to and what to talk to 'em about."

**Inmate/Jones, Sr.:** "I – I gave you his number the other day. Shep. He gotta give you 375. Ok?"

**Female:** "Ok." [unintelligible].

**Inmate/Jones, Sr.:** "So Carlos – Carlos – Carlos give you 125. Shep give you 375. And, umm, [unintelligible]. [Unintelligible] gotta give you 3400. But I just seen him today, so he not gonna be ready with it for a couple of days. But, those people…"

**Female:** "They got your phone? Or they gonna let you bring it – get it [unintelligible]."

**Inmate/Jones, Sr.:** "No, no, they put it in my property. They put it in my property."

7

20.     Affiant's interpretation of this call is that Jones, Sr.'s significant other, whether wife or girlfriend, is confirming that she has removed (or "cleaned up") the narcotics and/or proceeds from narcotics trafficking, located in various places in Jones, Sr.'s residence. Jones, Sr. then instructs the female that she will need to use some of that money (that which was located on or near the "headboard") to secure the release of Eddie Jones, Jr., who was arrested with Jones, Sr., and remained in custody at that time.  In response to the female's inquiry as to why Jones, Jr. was arrested, Jones, Sr. states: "'Cause he was sittin' in the backseat with it[,]" which we believe to be a reference to the large amount of narcotics found in the backseat, near Jones, Jr.

21.     During the call, Jones, Sr. also discusses the Device at issue herein; states his intention to release the phone to the female; and instructs the female as to certain individuals she should contact, apparently to collect on debts believed to be related to narcotics trafficking.  The call also indicates the female's general concern with lack of income, which concern we interpret to be caused by Jones, Sr.'s inability to traffic in narcotics and to collect payments related thereto while he is in custody.  Affiant expects that the Device will contain identity and relationship information, establishing connections between Jones, Sr., and others who may be involved in criminal activity and, specifically, narcotics trafficking.

22.     Finally, Jones, Sr. confirms that the phone was placed in East Baton Rouge Parish Prison Property when he states: "They put it in my property."

23.     Affiant is aware that criminals often use cell phones, such as the Device, to communicate in order to facilitate criminal activity.  For instance, cell phones are often used to facilitate narcotics trafficking between members of a criminal organization and between

8

members and their drug clients. Additionally, a cell phone is used as a mode of both spoken and written communication, and contains text messages and call logs, which serve as the equivalent of records and documentation, or "ledgers," of narcotics sales or other drug activity.

24.     On March 8, 2019, the Device was taken into custody by the East Baton Rouge Parish Prison Property and, at present, it remains there. Affiant personally observed the Device at that location, in order to accurately identify and photograph it for purposes of this warrant application.

25.     In Affiant's training and experience, Affiant knows that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the East Baton Rouge Parish Prison Property.

26.     Based on the totality of the facts and evidence, and based on Affiant's training and experience, Affiant believes the Device contains evidence that links Jones, Sr. to narcotics trafficking, in relation to the distribution quantities of narcotics found in his vehicle at the time of the traffic stop and his subsequent arrest on March 8, 2019.

**TECHNICAL TERMS**

27.     Based on Affiant's training and experience, Affiant uses the following technical terms to convey the following meanings:

a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless

9

telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio,

10

video, or photographic files.  However, a portable media player can also store

other digital data.  Some portable media players can use removable storage

media.  Removable storage media include various types of flash memory cards

or miniature hard drives.  This removable storage media can also store any

digital data.  Depending on the model, a portable media player may have the

ability to store very large amounts of electronic data and may offer additional

features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display

its current location.  It often contains records the locations where it has been.

Some GPS navigation devices can give a user driving or walking directions to

another location.  These devices can contain records of the addresses or

locations involved in such navigation.  The Global Positioning System

(generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the

Earth.  Each satellite contains an extremely accurate clock.  Each satellite

repeatedly transmits by radio a mathematical representation of the current

time, combined with a special sequence of numbers.  These signals are sent by

radio, using specifications that are publicly available.  A GPS antenna on Earth

can receive those signals.  When a GPS antenna receives signals from at least

four satellites, a computer connected to that antenna can mathematically

calculate the antenna's latitude, longitude, and sometimes altitude with a high

level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device

used for storing data (such as names, addresses, appointments or notes) and

11

utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

12

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

28. Based on Affiant's training, experience, and research, Affiant knows that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In Affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29. Based on Affiant's knowledge, training, and experience, Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have

been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

30.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data

14

stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant Affiant is applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

33.    Affiant submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A, and depicted in photographs contained in Attachment C, to seek the items described in Attachment B.

## REQUEST FOR SEALING

34.    It is respectfully requested that this Court issue an order sealing, until further

order of the Court, all papers submitted in support of this application, including the

application and search warrant.  Affiant believes that sealing this document is necessary

because the warrant is relevant to an ongoing investigation.  Based upon Affiant's training

and experience, Affiant has learned that criminals actively search for criminal affidavits and

search warrants via the internet, and disseminate them to others online. Premature disclosure

of the contents of this affidavit and related documents may have a significant and negative

impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*TFO Resa*

Resa J. Davis, Task Force Officer-ATF

Sworn to before me and subscribed in my presence at Baton Rouge, Louisiana, this
_3rd_, day of May, 2019.

*Erin Wilder-Doomes*

ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE

16

COPY

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    19-mj- 61 |
| Gold Samsung Cell Phone, IMEI: 354255096762283; FCC: A3LSMJ737P; Currently in the Custody of the East Baton Rouge Parish Sheriff's Office, Baton Rouge, LA | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Middle_____ District of _____Louisiana_____ *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENTS "A" AND "C"

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

        **YOU ARE COMMANDED** to execute this warrant on or before _____May 16, 2019_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Erin Wilder-Doomes_____ .
*(United States Magistrate Judge)*

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
        ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    __5/3/19, 11:00 a m__          _Erin Wilder-_____
                                                        *Judge's signature*

City and state:      Baton Rouge, LA                   Erin Wilder-Doomes, Magistrate Judge
                                                        *Printed name and title*

## ATTACHMENT A

The property to be searched is a 32GB, Samsung, with IMEI # 354255096762283, SKU # SPHJ737PABB, FCC ID # A3LSMJ737P, hereinafter the "Device." The Device is currently in law enforcement possession, in the East Baton Rouge Parish Prison Property, where it was taken into custody incident to the arrest and processing of Eddie Jones, Sr., on March 8, 2019.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      The following records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g)(1), Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Section 924(c) and involve Eddie Jones, Sr.:

      a.  any information related to narcotics trafficking;

      b.  lists of customers or other dealers/distributors and related identifying information;

      c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

      e.  all financial records or other account information related to proceeds of narcotics trafficking.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      a.  records of Internet Protocol addresses used;

      b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

## ATTACHMENT C: SIX (6) PHOTOS

1.      Photo of front of the Device

2.      Photo of back of the Device

3.      Photo of the Device, as taken into custody, in black carrying case/wallet, with ID

4.      Photo of the Device, as taken into custody, in black carrying case/wallet, with ID
        fully exposed

5.      Photo of the Device, depicting IMEI and SKU

6.      Photo of the Device, depicting IMEI and FCC ID









